ACCEPTED
04-14-00542-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/5/2015 7:32:09 PM
KEITH HOTTLE
CLERK

## CASE NO. 04-14-00542-CV

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL
CIRCUIT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

03/5/2015 7:32:09 PM

KEITH E. HOTTLE
Clerk

CITY OF LEON VALLEY, TEXAS, UNKNOWN EMPLOYEE(S)
OF CITYOF LEON VALLEY and IRENE BALDRIDGE,
**Individually**
Appellants
V.
WM. RANCHER ESTATES JOINT VENTURE,
RAFAEL ALFARO, JOSE ALFARO, CARMAN ALFARO,
DANIEL BEE, ROBERT CALDWELL, ANNE CALDWELL,
DEFERNCE SERVICE BUSINESS, INC., EARL DODERER,
SYLVIA DODERER, JAMES DOWDY, BETTY DOWDY,
ISSAC ELIZONDO, SUZANNE ELINZONDO, ROBERTO
GALINDO,
ERMA GALINDO, SHIRL JACKSON, ANNE JACKSON, AND
RICARDO A. PADILLA
Appellees

## APPENDIX TO APPELLEES' BRIEF

O. RENE DIAZ
SBN: 05804775
DIAZ JAKOB, LLC
The Historic Milam Building
115 E. Travis St, Suite 333
San Antonio, TX 78205
Tel. (210) 226-4500
Fax (210) 226-4502
E-mail/E-Service: ORD@diazjakob.com

COUNSEL FOR APPELLEES

# APPENDIX

| TAB | EXHIBIT | CITATION |
|---|---|---|
| TAB 1 | "Exhibit A" - Affidavit of Daniel Bee dated May 16, 2014 | C.R. V7, 157-173 |
| TAB 2 | "Exhibit B" - Affidavit of Arthur Reyna dated June 3, 2014 | C.R. V7, 180 |
| TAB 3 | "Exhibit C" - Affidavit of Rudy Garcia dated June 3, 2014 | C.R. V7, 178 |
| TAB 4 | "Exhibit D" - Affidavit of Elizabeth Bee dated June 3, 2014 | C.R. V7, 182-183 |
| TAB 5 | "Exhibit E" - Summary of missing records and executive sessions attended by Irene Baldridge from December 28, 2010 to March 15, 2011 | C.R. V7, 193 |

STATE OF TEXAS §
§
BEXAR COUNTY §

<u>THE AFFIDAVIT OF DANIEL S. BEE</u>

<u>CONCERNING REAL ESTATE DEALINGS WITH</u>

<u>ALIE BALDRIDGE AND IRENE BALDRIDGE AND INTERNATIONAL REALTY PLUS</u>

Before the undersigned notary, on this day personally appeared DANIEL S. BEE, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1. My name is Daniel S. Bee. I am over the age of eighteen years of age. I have never been convicted of any felony, and I am in all manners competent to make this affidavit. All of the factual statements contained in this affidavit are true and correct and are based upon my personal knowledge.

2. I am the manager and designated representative of the Real Estate Joint Venture known as the Wm. Rancher Estates, J.V. I am also the chief spokesperson and representative of all the individual plaintiffs who are the landowners that make up the Joint Venture. I am also the designated real estate broker for the real property which makes up the joint venture. When I use the terms: 'Wm. Rancher Estates' and 'Seneca West' in this affidavit and generally in this litigation, it refers to the real property owned or held by the individual plaintiffs in this litigation.

3. As the designated litigation representative of the Joint Venture and of the individual joint venture members, I have the responsibility of managing the property, this litigation and acting as the chief liaison between the individual landowner plaintiffs and the attorneys who represent the plaintiffs in the lawsuit known as: Cause No. 2013-CI-03399; *Wm. Rancher Estates Joint Venture, et al v. City of Leon Valley, Texas, et al*; Filed in the 225th Judicial District Court of Bexar County, Texas. I have dealt with the land that is the subject of this case for the last 28 years; I have very specialized knowledge about the property and all of the transactions surrounding the property which form the basis of the lawsuit. There are no other individual plaintiffs who have as much detailed or comprehensive knowledge of the case or of the underlying facts.

4. I am a real estate broker, licensed by the Texas Real Estate Commission (TREC), the agency of the State of Texas that licenses and regulates real estate professionals in the state. Like myself,

Alie Baldridge, was a real estate broker, also licensed by TREC. Alie Baldridge was also the owner of International Realty Plus, and Mr. Baldridge was also the sponsoring real estate broker for Irene Baldridge. Contrary to Irene Baldrige's Affidavit of October 14, 2013, she is not a licensed real estate broker. She was at the time and is now a real estate 'salesperson' commonly called a real estate 'agent' also licensed by TREC. *See* TREC official Licensing Information on Irene S. Baldrige printed on 4-28-14 attached as EXHIBIT L-1. www.trec.state.tx.us. Among real estate professionals, it is commonly known that every licensed 'salesperson' or 'agent' must work under or be sponsored by a licensed real estate 'broker.' Real estate 'agents' get paid by and share in the real estate sales commissions of the 'broker.'

5. With respect to real estate transactions, real estate 'brokers' have the authority to speak for and to legally bind their 'agents,' and real estate 'agents' have the authority to bind their 'brokers.' It is commonly understood among licensed real estate professionals that 'brokers' and 'agents' share commissions or a percentage (%) of the sales price in a real estate transactions. It is also commonly understood in the real estate industry that the agents and brokers on both sides of a real estate transaction, that is, the brokers and agents representing the buyer and the brokers and agents representing the seller of real property will all share in the real estate commissions or a percentage of the sales price.

6. All three of us, Irene Baldridge, Alie Baldridge, her late husband and I were all real estate professionals, licensed by TREC, and subject to the same licensing regulations and code of ethics for real estate professionals in the State of Texas. As licensed real estate professionals, Irene Baldridge, and Alie Baldridge, (Irene's late husband) and I all knew several things concerning the sale of the Wm. Rancher Estates property which is the subject of this litigation:

   a) With respect to real estate transactions, as the sponsoring broker, Alie Baldridge could and did speak spoke for Irene Baldridge, and Irene Baldridge as a real estate agent could speak for her broker, Alie Baldridge;

   b) If a sale occurred between clients of the Baldridge's and clients of mine (such as the Plaintiffs – Wm. Rancher Estates J.V.), that we would all share in a portion of the real estate commissions arising from the sale of the property;

   c) The real estate commission on the Wm. Rancher Estates Property at that time (2010 to 2011) would have been in the range of $60,000.00 up to $120,000.00, which is six percent (6%) of a sales price of between one million and two million dollars ( $1,000,000.00 and $2,000,000.00);and

7. In order to sell the Wm. Rancher Estates property made the basis of this lawsuit, the plaintiffs needed to have the property either zoned or rezoned from the zoning description known as 'R-1' – which means Single Family Dwelling District, with relatively large lots with single family homes to a zoning description known as 'R-6' – which means Garden House District (a slightly higher density district of single family homes on small lots, commonly called garden homes).

8. Contrary to the Affidavit of Irene Baldridge, she was well aware of the purchase, proposed development, and zoning designation request as early as May 2010. I personally introduced Irene Baldridge to Fred Ballard, a principal of Huntington Communities, the buyers of the property and applicants on the zoning request on May 22, 2010 at Leon Valley City Hall. At that time I heard, Mr. Ballard tell Irene Baldridge that he had the property under contract and was submitting an R-6 zoning designation request.

9. <u>Unlawful or Illegal Actions by Irene Baldridge and Alie Baldridge:</u> During the time frame from May 2010 until at least July 2011, both Alie Baldridge and Irene Baldridge on multiple occasions (described in more detail below) each approached me and solicited me on behalf of both their clients to make a purchase of the property known as Seneca West (i.e., Wm. Rancher Estates), the property which is the subject of this litigation. Both Alie Baldridge and Irene Baldridge stood to make a substantial financial gain by being involved in this transaction, because they would receive a percentage of the real estate commission on the sale of the property.

10. In soliciting me to sell the property to their clients, both Alie Baldridge and Irene Baldridge, on multiple occasions threatened that they would use their influence in the city government of the City of Leon Valley either to block or approve the Plaintiffs' zoning requests depending upon whether or not we would sell the property to the Baldridge's clients. Specifically, Irene Baldridge, at a time when she was a public servant, solicited me on behalf of her real estate clients and that she would exercise her discretion as a public servant and/or her vote as a member of City Council to either block or approve the zoning reclassification of the property depending upon whether or not I would include her in the sale of the property – that is – depending upon whether or not we sold the property to Irene Baldridge's clients – so that Alie Baldridge and Irene Baldridge would benefit financially.

11. <u>Conversations with Irene Baldridge Regarding Her Clients' Interest in Purchasing the Property:</u> I had many such conversations directly with Irene Baldridge and with Alie Baldridge

---

concerning the potential sale of the property to the Baldridges' clients. These conversations occurred in person, at Leon Valley Chamber of Commerce Meeting, and by telephone, and they occurred on: July 2, 7, 21, 22, 29, 30, 2010, and on August 5, 6, 10, 2010. I recorded one such telephone conversation with Irene Baldridge, which occurred on July 10, 2010, and I have attached a true and correct transcription of my **telephone conversations with Irene Baldridge** on July 2, July 7, and July 22, 2010 to this Affidavit as 'Exhibit L-2.' In the relevant portions, the conversation reads as follows: :

a.  **July 7, 2010,** telephone conversation between Irene Baldridge and Daniel Bee:

I Baldridge:  Anyway, the reason I'm calling is that I have been given a message to find out about the property along Huebner Creek.

D. Bee:  Yes

I Baldridge:  And um, so they asked me to ask you, if they give you what you are asking per acre and if they could be allowed to give you a back up offer contract.

D. Bee:  Wow, uh Irene, I, I have a back up already.

. . . . . .

I Baldridge:  Could be, could be, I don't doubt that. I wouldn't even think of that. Ha Ha. So...(pause) Well, that was uh, their, their comment and uh, so I don't know how you feel about that or how many back ups you can handle, but ... might be some options... (inaudible).

D. Bee:  Well, let me give it some more thought, I'm supposed to have uh, met with uh, my current people this afternoon, but I had to cancel on them because I had to go downtown.

I Baldridge:  Ok.

D. Bee:  But, uh we are gonna be, uh uh, moving forward, and you will be aware of it because of your position with the [city] council but, uh you know, who knows what will come.

I Baldridge:  Well, that's just it, (pause), and I understand that that puts me kind of in an awkward position, but I guess I could, uh abstain.

---

**D. Bee:** Ok well, first off we gotta get all these buyers moving in the right direction and that's gonna be a task in itself, just because they put it under contract doesn't mean that they're gonna close. I've been down that road.

**I Baldridge:** Oh, I agree with that, I agree with that.

......

**I Baldridge:** Well, give it some thought.

**D. Bee:** Oh, definitely will, I, I don't turn down a buyer, indeed, they are few and far between.

......

**I Baldridge:** I understand that. Well, alright then I will leave it at that with you and give them the information and that you already have a back up but you are thinking about accepting and get that in order.

**D Bee:** Oh indeed, indeed.

.....

**D Bee:** That was Irene Baldridge, broker and city council woman at Leon Valley. It is approximately 4:30 in the afternoon Wednesday the 7th of July 2010. She is aware that there is a conflict.

b) <u>July 22, 2010:</u> telephone conversation between Irene Baldridge and Daniel Bee:

**D. Bee:** Daniel Bee, returning Irene's call.

.....

**I Baldridge:** Um, I'm ok, (inaudible).... Uh about the possibility of a back up offer and uh....(inaudible) and uh....what you thought....(inaudible).

**D. Bee:** Oh yeah, uh, yeah I was think it over and I think what would be the best avenue for us to take, Irene, would be to simply have a, a letter of intent composed and simply address it as uh, Seneca West, 70 acres and have them put a price per

---

square foot or per acre that they are comfortable with and they that way I can have the document in line with uh, the other two I am working with.

I Baldridge: Ok, so you want a letter of intent for 70 acres, or 70.4 acres... (inaudible).

D Bee: Oh no, call it approximately 70 acres.

I Baldridge: Ok, approximately.

D. Bee: Yeah, and refer to it as Seneca West, that's uh, I have found is the best way to identify it. And uh, have them put down an offer per square foot or per acre that they find desirable, and then, that's what I've got with the other backup is simply have a letter of intent in place with these folks.

I Baldridge: Ok, you don't have a asking price?

D. Bee: Uh, I do but it is just a ridiculously high price, uh you know, we are asking $2.75 a square foot and that's uh, that's a little more expensive than I think it possibly should be, but uh, eventually it will get there, but not right now in the condition it's in.

. . . . .

I Baldridge: (inaudible)....I'll pass it along.

D Bee: Ok, thanks a bunch.

I Baldridge: Where should I send it?

D. Bee: Have them send it to you, Irene, and then from you to me and that it maintains your relationship.

I Baldridge: Ok...(inaudible).

D. Bee: Yeah, I think that is probably the simplest and most direct manner in which we all stay in order.

I Baldridge: Thank you very much.

. . . . .

That again was Irene Baldridge. It is Thursday the 22nd of July, approximately uh, ten minutes of noon. Irene again is coming forward with a back up contract on the acreage over there, uh very, anyway she is aware. Bye bye.

12. **Irene Baldridge Introduces Me to Her Clients on August 10, 2010:** Approximately two weeks later, on or about August 10, 2010, Irene Baldridge summoned me and I attended a meeting at her real estate office, International Realty Plus, an office she shared with her husband and sponsoring broker, Alie Baldridge. The purpose of the meeting was so that I could meet her clients, and we could discuss the backup offer to purchase that her clients wished to make on the Wm Rancher Estates property. Present at this August 10, 2010, meeting at the office of International Realty Plus, were Alie Baldridge, Irene Baldridge, Steve Hanan's son and Bill Jackson of Hanan Development Co. and David Matlock of MI Homes. As is my custom, at the beginning of every meeting discussing a real estate transaction, I ask everyone in attendance who they represent or who is representing them. At the beginning of this meeting, Steve Hanan's son, Bill Jackson of Hanan Development Co. and David Matlock all answered, **Yes, Irene Baldridge was their agent and representing them in this transaction,** and I then asked Irene Baldridge if Mr. Hanan, Mr. Jackson and Mr. Matlock were her clients, and Irene Baldridge answered, 'Yes, **they're my clients.'** Of these three clients of Irene Baldridge, David Matlock of MI Homes subsequently made an offer to purchase the property, which demonstrates that he was a *bona-fide* prospective purchaser at the time we met at Irene Baldridge's office six (6) months before the vote on March 1, 2011. In June 2011, Mr. Matlock once again approached me to purchase the property for approximately $1.975 million, and once again, he informed me that he wanted Irene Baldridge involved in the transaction. I took that to mean Irene Baldridge was still representing Mr. Matlock as her client, and I told Mr. Matlock that Irene Baldridge was *persona non grata* among the property owners.

13. Oral representations of agency, such as the one made between Irene Baldridge, Steve Hanan's son, Bill Jackson and David Matlock are common in the real estate field, and real estate professionals rely on such oral representations frequently. The Texas Real Estate Licensing Act (TRELA) § 1101.558 requires that the form "Information About Brokerage Services" be provided at the beginning, unless there are licensed real estate professionals on each side of a transaction, in which case, the disclosure of representation need not be signed. Furthermore, the

duty to disclose who the agent represents at the first contact with the other party in the transaction or the other party's agent is also expressed in NAR's and CCIM's Codes of Ethics (SP 16-10, 11 & 12).

14. **Alie Baldridge's Solicitations Regarding the Property in Question:** The following are some specific occasions on which **Alie Baldridge,** Irene Baldridge's late husband and her sponsoring Real Estate Broker, either solicited the property and/or threatened to have his wife Irene exercise her discretion as a public official of Leon Valley, to either withhold or grant my clients' favorable zoning action, in exchange for including Irene Baldridge and Alie Baldridge in the transaction for their financial benefit:

   a) On **March 22, 2011,** approximately three (3) weeks after the vote deny our zoning request, at the Leon Valley Chamber of Commerce meeting at the Outback Steakhouse near IH-Loop 410, Alie Baldridge, owner of International Realty Plus, Real Estate Brokerage, said directly to me, **'Leon Valley takes care of their own; you will have to deal with us.'** I took this to mean, that my clients, Wm. Rancher Estates J.V., would never get the zoning request for our property approved by the City of Leon Valley, unless we agreed to sell the property to clients represented by Alie and Irene Baldridge, so that Irene Baldridge could exercise her discretion as a public servant to either approve or disapprove the zoning in connection with the proposed real estate transaction, so that Alie and Irene Baldridge would benefit financially by receiving a share of the real estate commissions customarily paid in the real estate industry upon the sale of any real property.

   b) On **April 20, 2011,** approximately four (4) weeks later and approximately seven (7) weeks after the vote denying our zoning request, at the Leon Valley Chamber of Commerce meeting at the Leon Valley Community Center, Alie Baldridge, owner of International Realty Plus, was seated by the entrance to the meeting, and said to me, 'When are you going to let us sell the property?' When Alie Baldridge said, 'us,' he was referring to his wife, Irene Baldridge, who was employed as a real estate agent or licensed 'sales person', also with International Realty Plus, and who was an elected official in the City of Leon Valley who exercised her discretion to either approve or disapprove the zoning request. I responded: 'The sellers will only consider R-1 offers; Thanks to your wife!' Alie Baldridge appeared angry and said to me, 'It is all

over…you will not sell without us.' Which I took to mean, that Plaintiffs would never get our requested zoning from the City of Leon Valley through Irene Baldridge's exercise of discretion, unless Alie and Irene Baldridge benefitted financially in the form of a commission or a 'kick-back.' In other words, Alie Baldridge made it clear that my clients would never get favorable zoning treatment from the City of Leon Valley, unless Irene Baldridge exercised her discretion as elected official on our behalf, and unless Alie Baldridge and Irene Baldridge could benefit financially by receiving a portion of the commission on the sale of the property. I became very angry at the obvious corruption evident in Alie Baldridge's threat and I said, 'No this is not over, I'm going to take your real estate license.'

c) On **July 20, 2011**, at another Leon Valley Chamber of Commerce meeting, this time at Henry's Puffy Taco Restaurant, Alie Baldridge once again approached me and solicited a purchase of the property when he said, 'Have you closed yet? We're still waiting.' Alie Baldridge once again was soliciting on behalf of clients of his and Irene Baldridge to purchase the property so that they could each benefit financially from the commissions, impliedly Alie was offering for Irene Baldridge, a public servant in Leon Valley to exercise her discretion in a manner from which she would benefit financially.

Further Affiant sayeth not.

DANIEL S. BEE, Affiant

SWORN TO AND SUBSRCIBED by the Affiant, DANIEL S. BEE, before me, the undersigned Notary Public in and for the State of Texas, on this the _____11a_____ day of ___May___, 2014.



YADIRA S. GARCIA
Notary Public, State of Texas
My Commission Expires
July 03, 2016

NOTARY PUBLIC, STATE OF TEXAS

**Affidavit of Daniel S. Bee Concerning Real Estate Dealings with Alie and Irene Baldridge**

# "EXHIBIT L-1"

## to the

## Affidavit of Daniel S. Bee

---

# TREC OFFICIAL LICENSING INFORMATION ON

# BALDRIDGE, IRENE S.

# PRINTED ON 4-28-14

FROM http://www.trec.state.tx.us/newsandpublic/licenseeLookup

*my license*
online services

Home | Contact Us, | Forms, Laws | [illegible] | Licenses: | Education | Inspector | Complaints,
      | Agency Info | & Contracts | | Applications | & Exams | Information | Consumer Info

Please Note: The information in this Licensee Info Search page is refreshed each night from our main computer system records. For example, if you have changed your mailing address online today, the new address will not show up on this page until tomorrow.

## TREC Licensee Info Search
Tip: A License Number search is faster than a Name search.

License Type: ⊕ Salesperson or Broker  ⊙ Inspector  ⊙ E.R.W.

License Number or Name: "LastName, FirstName" or "Business Name"

416651                          [ Search ](see search tips)

Optional: ☐ any part of name (for name searches only)

Licensee Details for: Salesperson or Broker - "Baldridge, Irene S"

| Licensee Name | Lic. Nbr | Lic. Type | Lic. Status | Exp. Date | Designated Supervisor | Fingerprint Status |
|---|---|---|---|---|---|---|
| Baldridge, Irene S | 416651 | Salesperson | Active | 07/31/2015 | | Fingerprinting requirements have been met. |

**Licensee Email Address** (see disclosure policy)

click for email address

→ isb28@sbcglobal.net

**Licensee Phone**

210-523-1206

Broker's Permanent Mailing Address
11106 CATCHFLY FIELD
HELOTES, TX 78023

| Sponsor Name | Lic. Nbr | License Type | Lic. Status | Exp. Date | Spons. Date |
|---|---|---|---|---|---|
| Burns, Scott Edward | 554558 | Broker | Active | 06/30/2015 | 3/15/2013 |

## Education Information

This licensee may still be subject to SAE Requirements -click here for further SAE information. While under SAE, the same course cannot be taken more than once in a 2 year period.

This licensee may be subject to MCE Requirements - which mandates completion of 15 hours of MCE courses (including the 3 hr *TREC Legal Update* course and the 3 hr *TREC Ethics* course). Regarding "duplicate" courses, see 22 TAC Sec. 535.92(g).
Also, please see our MCE FAQs page.

## Completed Courses

| Course Date | Course Nbr | Course Name | Provider Name | Total Hrs | Legal Hrs |
|---|---|---|---|---|---|
| 03/04/2014 | 26746 | Mission Possible: Reducing Liability | SAN ANTONIO BOARD OF REALTORS, INC | 1 | 0 |
| 02/26/2014 | 24282 | HOW TO USE FINANCING TO ATTRACT BUYERS & CREATE MORE SALES | SAN ANTONIO BOARD OF REALTORS, INC | 4 | 0 |
| 05/24/2013 | 23783 | REAL ESTATE GAME CHANGERS | CHAMPIONS SCHOOL OF REAL ESTATE, LTD | 9 | 0 |
| 05/23/2013 | 23556 | TREC Ethics MCE | CHAMPIONS SCHOOL OF REAL ESTATE, LTD | 3 | 3 |
| 05/23/2013 | 23555 | TREC Legal Update MCE | CHAMPIONS SCHOOL OF REAL ESTATE, LTD | 3 | 3 |

167

# "EXHIBIT L-2"

to the

Affidavit of Daniel S. Bee

---

## TRANSCRIPT OF TELEPHONE CONVERSATIONS BETWEEN

### DANIEL S. BEE

### AND

### IRENE S. BALDRIDGE

### ON 7-2-10; 7-7-10; AND 7-22-10

Transcript
Leon Valley
Irene Baldridge- Council Woman and Real Estate Broker
3 Phone calls
1) 7-2-10 11:41 AM   2) 7-7-10 4: 30 PM   3) 7-22-10 11:50 AM

### 1) 7-2-10 Friday 11:41 AM

D. Bee: Phone call from Irene Baldridge, International Realty Plus, Leon Valley city council woman and real estate agent, 7-2-10, Friday 11:41 AM. Call pertaining to Seneca West property.  Here is the call.
(beep of answering machine)

I. Baldridge: uh, Good morning, this Irene Baldridge with International Realty Plus.  I would appreciate a return call.  I'm at (210) 523-1206. Thank you.

### 2) 7-7-10 Wednesday 4:30 PM

D. Bee: I'm fine Irene, how are you?

I. Baldridge: I'm here, I'm sticking in there, it's not been too good a day.

D. Bee: Oh, you and I both, I just got back from downtown.

I. Baldridge: Ha, oh my God. I had um, one, one deal going and uh, the, today was the closing and the buyer changed lenders because they could get a half a percent better interest rate.

D. Bee: Well, I hope it was worth it to them.

I. Baldridge: I hope so, I hope that eventually I will get to close it. Ha- Ha

D. Bee: Ha- Ha

I. Baldridge: Another one, a buyer completely backed out because the house had windows that weren't unbreakable.

D. Bee: Well, I don't know of any windows that are not breakable.

I. Baldridge: Ha- Ha

D. Bee: Well, I hope they lost their earnest money.

I. Baldridge: Yup, they are losing their earnest money. So that's the way the ball bounces.

D. Bee: Indeed.

I. Baldridge: Anyway, the reason I'm calling is that I have been given a message to find about the property along Huebner Creek.

D. Bee: Yes

I. Baldridge: And um, so they asked me to ask you, if they give you what you are asking per acre and if they could be allowed to give you a back up offer contract.

D. Bee: Wow, uh Irene, I, I have a back up already.

I. Baldridge: Oh.

D. Bee: It's uh, I don't, you know all these years and no one was interested and suddenly in the past uh, three months I have had three different parties, of which two of them were really serious and I, uh went with one and the other insisted on a, a back up.

I. Baldridge: Well, uh, I don't know how many back ups you can handle. Ha- Ha.

D. Bee: Yeah, I mean, its just I'm so pleased it all happens, but I, I just am amazed that it has to happen all at the same time.

I. Baldridge: That's strange, its very strange how, how things are going.

D. Bee: I think a lot of it has to do with that uh, proposed activity along Huebner Creek.

I. Baldridge: Oh ok, ok.

D. Bee: I think that green belt, uh is something they are really, uh excited about.

I. Baldridge: Could be, could be, I don't doubt that. I wouldn't even think of that. Ha- Ha. So... (pause) Well, that was uh, their, their comment and uh, so I don't know how you feel about that or how many back ups you can handle, but... might be some options... (inaudible).

D. Bee: Well, let me give it some more thought, I'm supposed to have uh, met with uh, my current people this afternoon, but I had to cancel on them because I had to go downtown.

I. Baldridge: Ok.

**D. Bee:** But, uh we are gonna be, uh uh, moving forward, and you will be aware of it because of your position with the council but, uh you know, who knows what will come.

**I. Baldridge:** Well, that's just it, (pause) and I understand that that puts me kind of in an awkward position but I guess I could, uh abstain.

**D. Bee:** Ok well, first off we gotta get all these buyers moving in the right direction and that's gonna be a task in itself, just because they put it under contract doesn't mean that they're gonna close. I've been down that road.

**I. Baldridge:** Oh, I agree with that, I agree with that.

**D. Bee:** As a matter of fact, uh you met the fellow that, uh morning we were at the parks uh, meeting uh, when were standing outside the council chambers and I introduced you to that fellow.

**I. Baldridge:** Oh really.

**D. Bee:** Yeah, yes.

**I. Baldridge:** Ok, I remember meeting someone, but uh I would not know who he was, but that's alright.

**D. Bee:** Yeah, that, they are uh green builders, uh stainable, LEED, all that type of stuff out of Austin.

**I. Baldridge:** (inaudible).... Well, give it some thought...

**D. Bee:** Oh, I definitely will, I, I don't turn down a buyer, indeed, they are few and far between.

**I. Baldridge:** I know, I know, uh I've got some property listed right off of Marbach and off of Galm Road and I have been getting.... some calls ( inaudible) ... so, I don't know... (inaudible).

**D. Bee:** Well, we are lucky to be where we are in, in San Antonio here, we are one of six Texas cities on the list of twenty growing cities in the United States, we're number nineteen.

**I. Baldridge:** I understand that. Well, alright then I will leave it at that with you and give them the information and that you already have a back up but you are thinking about accepting and get that in order.

**D. Bee:** Oh indeed, indeed.

I. Baldridge: Alright.

D. Bee: Thank you Irene.

I. Baldridge: Thank you

D. Bee: Bye- bye

I. Baldridge: Bye-bye

D. Bee: That was Irene Baldridge, broker and city council woman at Leon Valley. It is approximately 4:30 in the afternoon on Wednesday the 7th day of July 2010. She is aware that there is a conflict.

3) 7-22-10 Thursday 11:50 AM

D. Bee: Daniel Bee, returning Irene's call.
(long pause)
Daniel Bee, returning your call, Irene.

I. Baldridge: (inaudible)

D. Bee: Good morning, I'm alright, and yourself?

I. Baldridge: Um, I'm ok, (inaudible)... uh about the possibility of a back up offer and uh,.... (inaudible)... and uh,.... what you thought... (inaudible).

D. Bee: Oh yeah, uh, yeah I was thinking it over and I think what would be the best avenue for us to take, Irene, would be to simply have a, a letter of intent composed and simply address it as uh, Seneca West, 70 acres and have them put a price per square foot or per acre that they are comfortable with and then that way I can have the document in line with uh, the rest uh, the other two I am working with.

I. Baldridge: Ok, so you want a letter of intent for 70 acres, or 70.4 acres... (inaudible)

D. Bee: Oh no, call it approximately 70 acres.

I. Baldridge: Ok, approximately.

D. Bee: Yeah, and refer to it as Seneca West, that's uh, I have found is the best way to identify it. And uh, have them put down an offer per square foot or per acre that they find desirable and then that's what I've got with the other backup is simply have a letter of intent in place with these folks.

I. Baldridge: Ok, you don't have a asking price?

D. Bee: Uh, I do but it is just a ridiculously high price, uh you know, we are asking $2.75 a square foot and that's uh, that's a little more expensive then I think it possibly should be, but uh, eventually it will get there, but not right now in the condition its in.

I. Baldridge: In the condition its in.

D. Bee: Mmh.

I. Baldridge: Ok, I appreciate that very much.

D. Bee: And that's simpler than trying to write up contracts and all this kind of stuff and it, it secures your place in line.

I. Baldridge: Ok, so... (inaudible)

D. Bee: Yes.

I. Baldridge: (inaudible)... I'll pass it along.

D. Bee: Ok, thanks a bunch.

I. Baldridge: Where should I send it?

D. Bee: Have them send it to you, Irene, and then from you to me and that way it maintains your relationship.

I. Baldridge: Ok, (inaudible words)

D. Bee: yeah, I think that is probably the simplest and most direct manner in which we all stay in order.

I. Baldridge: Thank you very much.

D. Bee: Yes, ma'am. Ok, bye-bye.
(pause)
That again was Irene Baldridge. It is Thursday the 22nd day of July, approximately uh, ten minutes of noon. Irene again is coming forward with a back up contract on the acreage over there, uh very, anyway she is aware. Bye-bye.

173

STATE OF TEXAS §
§
BEXAR COUNTY §

## AFFIDAVIT OF ARTHUR REYNA

Arthur Reyna appeared in person before the undersigned Notary Public on the date indicated below and stated under oath:

1) "My name is Arthur Reyna. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2) "I have been provided with a copy and I have reviewed the Plaintiffs' Amended Petition in Cause No. 2013-CI-03399; *Wm. Rancher Estates Joint Venture, et al v. City of Leon Valley, Texas, et al*; Filed in the 225th Judicial District Court of Bexar County, Texas.

3) "I served on the Leon Valley City Council from 2006 until 2014. I was present at the March 1, 2011 City Council meeting, when the Plaintiffs' rezoning application was heard and voted upon. It was not disclosed at the time of the vote that any Council Person had, or may have had, a conflict of interest in the rezoning request.

4) "I have read the facts alleged in the Amended Petition in this case, alleging that Council Person Irene Baldridge had, or may have had, a conflict of interest, in that she allegedly represented potential buyers for the land at issue in the vote. If such information had been known to me at the time of the vote on the rezoning request or if Council Person Baldridge had abstained from participating in and voting on the request, then I would have changed my vote on the matter and voted in support of rezoning the land.

5) "Because my vote would have changed and because I also believe other council member's votes would have changed if Council Person Baldridge had declared a conflict of interest or if had she abstained, the motion to deny the rezoning request would not have passed without Council Person Baldridge's vote.

_____
Arthur Reyna, Affiant

SIGNED under oath before me on June 3                    2014.

_____
Notary Public, State of Texas

RONALD B PRINCE
My Commission Expires
September 9, 2017

180

STATE OF TEXAS §
§
BEXAR COUNTY §

## AFFIDAVIT OF RUDY GARCIA

Rudy Garcia appeared in person before the undersigned Notary Public on the date indicated below and stated under oath:

1) "My name is Rudy Garcia. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2) "I have been provided with a copy and I have reviewed the Plaintiffs' Amended Petition in Cause No. 2013-CI-03399; *Wm. Rancher Estates Joint Venture, et al v. City of Leon Valley, Texas, et al*; Filed in the 225th Judicial District Court of Bexar County, Texas.

3) "I served on the Leon Valley City Council from 2009 until 2011. I was present at the March 1, 2011 City Council meeting, when the Plaintiffs' rezoning application was heard and voted upon. It was not disclosed at the time of the vote that any Council Person had, or may have had, a conflict of interest in the rezoning request.

4) "I have read the facts alleged in the Amended Petition in this case alleging that Council Person Irene Baldridge had, or may have had, a conflict of interest, in that she allegedly represented potential buyers for the land at issue in the vote. If such information had been known to me at the time of the vote on the rezoning request, and/or if Council Person Baldridge had abstained from participating in and voting on the request, then I would have ultimately changed my vote on the matter and voted in support of rezoning the land.

5) "Because my vote would have changed and because I also believe other council member's votes would have changed if Council Person Baldridge had declared a conflict of interest and/or if had she abstained, the motion to deny the rezoning request would not have passed without Council Person Baldridge's vote.

Rudy Garcia, Affiant

SIGNED under oath before me on ___June 3,___ 2014.

Notary Public, State of Texas

ANDREW J. WATSON
Notary Public, State of Texas
My Commission Expires
October 05, 2015

STATE OF TEXAS §
§
BEXAR COUNTY §

## AFFIDAVIT OF ELIZABETH BEE

Elizabeth Bee appeared in person before the undersigned Notary Public on the date indicated below and stated under oath as follows:

1) "My name is Elizabeth Bee. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2) "During December 2010 I was employed part-time for my father, Daniel S. Bee, at his real estate brokerage firm, DSB, Inc. Part of my job duties included attending meetings that my father did not attend. I attended the meeting of the Leon Valley Zoning Commission that considered the land involving the Plaintiffs in the lawsuit identified as: Cause No. 2013-CI-03399; styled: Wm. Rancher Estates Joint Venture et. al. v. City of Leon Valley et. al.; filed in the 225th District Court, Bexar County.

3) "On December 28, 2010, I attended the Leon Valley Zoning Commission Meeting on Case number ZC#2010385. I recall that the meeting was crowded, and that I sat next to Mr. Gilbert Laubach. I also recall the developers giving a presentation showing their proposed plan which included a request that the Plaintiffs' land be zoned as R-6. After the developer's presentation, people from the neighborhood began to speak. Mrs. Larkin said that most of her neighbors preferred the land never be developed at all.

4) "The speaker that took the most time was Marcus Semmelmann. He not only took his full time of five (5) minutes, but he also took his wife's full time of five (5) minutes. I remember him giving a detailed history lesson about how he had repeatedly stopped the development of this property. He kept mentioning things that happened in the 1970's and the 1980's, and he spoke for a really long time. He was even gestured that his time had expired. Other witnesses testified about traffic and emergency response times. Commission members also talked about flood plain issues. The final vote was six to one (6-1) to deny the zoning request. I stayed at the meeting until the meeting adjourned.

5) "After the meeting, I told my father, Daniel S. Bee, to request a recording of the Commission meeting, primarily because of the detailed history that Marcus Semmelmann gave of his efforts to prevent development of the area.

6) "I have reviewed the written minutes of the December 28, 2010, Leon Valley Zoning Commission meeting, and I believe the summary of the testimony is incomplete and is not a faithful summary of what the testimony covered. For example, Linda Barker covered far more

Page 1 of 2

topics than what the written minutes indicate. Also, the summary of Marcus Semmelmann says nothing about his time as a public official, or the history about the 1970's and the 1980's or his efforts to prevent the development of the land. It also lists a house on 'Blackberry' but the name of the street is not stated on the audio recording. Although, Marcus Semmelmann spoke the longest of any witness, the summary of his testimony is only of average written length, indicating the written summary is incomplete.

7) "I have also listened to the official audio recording of the December 28, 2010, Leon Valley Zoning Commission meeting, which was obtained by my father, Daniel S. Bee, from the City of Leon Valley. It is also incomplete. Specifically, the audio recording of Marcus Semmelmann's testimony was edited or altered and is incomplete. For example, although Marcus Semmelmann spoke at least ten (10) minutes or more, the recording is only approximately five (5) minutes long. Additionally, there is a noticeable gap in the audio recording of his testimony. I also do not understand why in the middle of his statement there is a break dividing his testimony into two separate tracks in what should have been one continuous piece of audio, to me this indicates that the audio recording has been edited or altered and is incomplete.



Elizabeth Bee, Affiant

SIGNED under oath before me on _____June 3_____ 2014.

Notary Public, State of Texas

SYNDI SALINAS
Notary Public, State of Texas
My Commission Expires
May 20, 2018

# SUMMARY OF MISSING MEETING RECORDS AND EXECUTIVE SESSIONS ATTENDED BY IRENE BALDRIDGE FROM Dec. 28, 2010 to March 15, 2011

## FROM CITY OF LEON VALLEY RECORDS

| DATE OF MEETING | TYPE OF MEETING | STATUS OF THE RECORDS | EXECUTIVE SESSION | BALDRIDGE PARTICIPATION |
|---|---|---|---|---|
| Dec. 28, 2010 | Zoning Commission | Produced But • Content is missing • Evidence of Possible Tampering -Gap in Audio Recording | No Executive Sess. | Baldridge Not Present |
| Jan. 4, 2011 | City Council Regular Mtg. | Produced | No Executive Sess. | N /A |
| Jan. 13, 2011 | City Council Special Mtg. | Missing | Exec. Sess. – Unknown | Baldridge Participated – Unknown |
| Jan. 18, 2011 | City Council Regular Mtg. | Missing | Exec. Sess. -- Unknown | Baldridge Participated – Unknown |
| Jan. 24, 2011 | City Council Special Mtg. | Missing | Exec. Sess. – Unknown | Baldridge Participated – Unknown |
| Jan. 28, 2011 | City Council Special Mtg. | Missing | Exec. Sess. -- Unknown | Baldridge Participated – Unknown |
| Jan. 29, 2011 | City Council Special Mtg. | Missing | Exec. Sess. -- Unknown | Baldridge Participated – Unknown |
| Feb. 1, 2011 | City Council Regular Mtg. | Produced | Exec. Sess. – Yes | Baldridge Participated – Yes |
| Feb. 5, 2011 | City Council Special Mtg. | Missing | Exec. Sess. – Unknown | Baldridge Participated – Unknown |
| Feb. 10, 2011 | City Council Special Mtg. | Missing | Exec. Sess. – Unknown | Baldridge Participated – Unknown |
| Feb. 15, 2011 | City Council Regular Mtg. | Produced | Exec. Sess. – Yes | Baldridge Participated – Yes |
| Mar. 1, 2011 | City Council Regular Mtg. | Produced | Exec. Sess. – Yes | Baldridge Participated –Yes |
| Mar. 7, 2011 | City Council Special Mtg. | Missing | Exec. Sess. -- Unknown | Baldridge Participated – Unknown |
| Mar. 15, 2011 | City Council Regular Mtg. | Produced | Two Exec. Sessions | Baldridge Participated |

Plaintiffs' Supplemental Brief in Reply to Defendants' City of Leon Valley and Irene Baldridge Letter Brief. & In Support of Plaintiffs Response to Second Amended Plea to the Jurisdiction